# UNITED STATES DISTRICT AND BANKRUPTCY COURTS

## FOR THE DISTRICT OF COLUMBIA

ROBERT BRITT

11411 Lake Arbor Way# 915

Mitchellville, MD. 20721

        Plaintiff

V

Clark Law Group, PLLC

1250 Connecticut Ave. N.W.  Suite 200

Washington, D.C. 20036

        Defendant

**FILED** JUN -3 2015 Clerk, U.S. District and Bankruptcy Courts

Case: 1:15-cv-00818   Jury demand
Assigned To : Jackson, Ketanji Brown
Assign. Date : 6/3/2015
Description: Pro Se Gen. Civil  (F Deck)

## Complaint

On approximately February 7, 2012 Mr. Robert Britt went to the Clark Law Group and met with Ms. Denise M Clark.   Mr. Britt explained to Ms. Clark that he wanted to file (3) Law suits.  He wanted to sue his F.C.G.O.A union for refusing to process his grievance against  G4S Government Solutions. He wanted to sue G4S for not processing his application for disability insurance. He wanted to sue G4S for transferring his health and welfare pay into a mandatory 401K plan. Mr. Britt recalls writing these (3) complaints for Ms. Clark.

**RECEIVED** JUN - 3 2015 Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

Ms. Clark informed Mr. Britt that all 3 of his complaints were valid and she would research the appropriate charges for his (3) complaints. Ms. Clark asked Mr. Britt if he had any co-workers who could testify to his claim that G4S was transferring the 200 union and non-union members' health and welfare pay into a mandatory 401k plan. Mr. Britt informed Ms. Clark his co-workers were terrified of G4S and would not participate. Ms. Clark asked Mr. Britt to try and he agreed to try. Ms. Clark asked Mr. Britt did he want to file a class action Law suit, Mr. Britt told Ms. Clark "No". Mr. Britt later discovered Ms. Clark filed a class action suit against his wishes.

Ms. Clark told Mr. Britt that his claims would be more believable if he had his co-workers to assert his claim. Actually, Ms. Clark should have sent a Cease and Assist Letters to the defendants G4S and the F.C.G.O.A union. The Cease and Assist Letter would have resulted with either Mr. Britt being assisted with his grievance or Mr. Britt obtaining documented proof of his claims by the defendant's default. Instead, Ms. Clark built Mr. Britt's entire case on his hearsay. Furthermore, 199 more hearsays from Mr. Britt's co-workers would not have strengthen his case, but it would have earned Ms. Clark millions of dollars whether she won or lost the case. Ms. Clark, in 2 ½ years of being on the case, never attempted to obtain documented proof that Mr. Britt attempted to exhaust the union. During the 4 month delay, Ms. Clark could have advised the Plaintiff to re-do the entire grievance procedure correctly. This tactic would have been effective, but it would not have complied with the Defendant's true objective of greed. Finally, the necessity obtaining documented proof of attempted union exhaustion occurred to Ms. Clark when the Judge informed Mr. Britt that she was going to dismiss the case against G4S if he did not provide documented proof that he attempted to exhaust the F.C.G.O.A union or proof that attempting to exhaust the union was futile. During the retainer signing, Ms. Clark told the Plaintiff she was going to use a case law to override the necessity of exhausting the union.

In August of 2014, Mr. Britt obtained documented proof of futility of pursuing assistance from the union.  Mr. Britt sent the email to Ms. Clark, but she made no use of it.  Ms. Clark did not send it to opposing counsel, nor the Judge, nothing.  Mr. Britt provided Ms. Clark with his pay-stubs which indicated (a) his health and welfare pay was being transferred into a G4S 401k plan, (b) G4S Government Solutions was the sole administrator of the 401k plan.  The Defendant should have known the F.C.G.O.A union was not a co-administrator of the 401k plan, as incorrectly charged in the law suit.

Mr. Britt provided Ms. Clark with a copy of the 2011-2014 Collective Bargaining Agreement, which indicated (a) the grievance procedure, (b) G4S Government Solutions as the administrator of the 401k plan, (c) the optional status of the 401k plan, (d) the requirement of an employee to exhaust the unions grievance process, prior to filing a Law suit against G4S Government Solutions, and (e). Article 11, section 2 which explains why a mandatory 401k plan is a breach of the C.B.A..  Mr. Britt provided Ms. Clark with a copy of the G4S 2011-2012 Benefit Enrollment Guide which indicated, (a) all full-time G4S employees are eligible for long term disability insurance, (b) that G4S was the administrator of 401k plan, and  (c) the 401k plan participation was optional.  Mr. Britt provided Ms. Clark with a letter from the F.C.G.O.A union which announced the mandatory 401k plan on the behalf of G4S.  Mr. Britt explained to Ms. Clark that the F.C.G.O.A union did not have any control nor management of the 401k plan.  The union was making the announcement on the behalf of G4S in order to deter anyone from requesting a grievance against mandatory 401k plan.  The union's announcement was also a demonstration of solidarity between G4S and the F.C.G.O.A union.

As a professional lawyer, Ms. Clark should have known that both G4S and the F.C.G.O.A. union could not be the simultaneous administrators of the 401k plan. However, Ms. Clark incorrectly charged the union and G4S with being the administrator of the 401k plan. Thus, Ms. Clark voluntarily withdrew the law suit against the F.C.G.O.A union. Ms. Clark should have known that the proper charge for a union refusing to file a member's grievance is Breach of Fiduciary Duty of Fair Representation. Ms. Clark had to make-up any charge against the union in order to mask the fact that she had permitted the statute of limitation to expire on Fair Representation charge, during her (4) months of blackmail. Mr. Britt's case against the union failed due to Ms. Clark's legal negligence. Ms. Clark's had a second chance to redeem herself in regard to the union when the International President of the union falsified article 11 of the C.B.A and sent it to G4S in order to be used as evidence against Mr. Britt. G4S sent the fake document to the opposing counsel, and he attempted to use it as evidence against Mr. Britt. This was a second opportunity for Ms. Clark to have charged the union with Breach of Fiduciary Duty of Fair Representation. Ironically, the when local President of the union insulted the Defendant in the email document the Plaintiff provided her, the Defendant threatened to re-open the case against the union.

October 28, 2011 Mr. Britt provided Ms. Clark with the returned health insurance application dated 10-28-11 and the sticky on the health insurance application dated 11-22-11. The sticky stated he has to go with union plan. The returned disability insurance application did not have any explanation attached to it. This document indicated (a) Mr. Britt submitted application before the due date November 30, 2011 and (b) Mr. Britt was eligible to receive disability insurance.

On February 25, 2012 Mr. Britt met with Ms. Clark to sign the retainer agreement. Ms. Clark attempted to omit Mr. Britt disability insurance claim. Mr. Britt confronted Ms. Clark and she hand wrote the complaint on the retainer agreement. Ms. Clark explained to Mr. Britt that (a) the Breach of Fiduciary Duty reflected his complaint against the F.C.G.O.A union for refusing to process his

grievance against G4S mandatory 401k plan, (b) Denial Of Disability reflected his complaint against G4S for refusing to process his application for disability insurance, and (c) Reduction of Wage reflected his complaint that G4S transferred his health and welfare pay into a mandatory 401k plan. Thus, Britt signed the retainer agreement after being misled by Ms. Clark into thinking that all (3) of his objections were going to be fulfilled.   Mr. Britt paid Ms. Clark $5,500, and Ms. Clark promised Mr. Britt she would file the law suit within (2) weeks. The retainer agreement did not include mention of the class action suit, because Mr. Britt told Ms. Clark he did not want a class action suit. Ms. Clark filed a class action suit anyway. Mr. Britt called Ms. Clark every (2) weeks for (4) months. Mr. Britt would ask Ms. Clark had she filed the law suit yet, and Ms. Clark would respond by asking Mr. Britt had he found any co-workers to join the law suit. When Mr. Britt told Ms. Clark no, she would say I will file you Law suit in (2) weeks. Ms. Clark refused to believe that none of the 200 co-workers were willing to join the Law suit and risk losing their job.

Finally, Mr. Britt grew tired of being blackmailed by Ms. Clark, and contacted the Washington D.C bar association. Mr. Britt filed a verbal complaint against Ms. Clark, and she filed the law suit incorrectly within  (3) days of the verbal complaint. The Defendant filed the law suit on June 25, 2012. However, Ms. Clark filed the wrong charge (breach of fiduciary duty on 401K plan) against the F.C.G.O.A union and permitted the proper charge, (breach of fiduciary duty of fair representation), 6 months statute of limitation to expire. Ms. Clark omitted the denial of disability complaint from the law suit. However, Ms. Clark did mention the subject in the Amended complaint in order deceive Mr. Britt into thinking it was a part of the Law suit. The Defendant never admitted that she failed to honor the retainer contract, in regard Plaintiff's denial of disability claim, until she was in the fee dispute process.


Mr. Britt's general complaint against Ms. Clark is Liability For Breach of Fiduciary Duty. Mr. Britt's specific complaints against Ms. Clark include:

\+                        **Reason for Liability  For Breach of Fiduciary Duty**

The Defendant billed the Plaintiff $20,000.  Therefore, if the Defendant had successfully blackmailed the Plaintiff to bring in his 200 co-workers to the Defendant, she would have made $4,000,000 whether she won or lost the class action suit.  However, the Defendant had to whittle down the Plaintiff's original case in order to match the single complaint of the 200 co-worker, which was the transference of the health and welfare pay into a mandatory 401K plan.  This is why the Defendant determined it was necessary to sabotage the Plaintiff's complaint against the F.C.G.O.A union and disability complaint against G4S.  Furthermore, the Defendant attempted to use a case law to override the necessity of exhausting the union process, because the 200 co-workers had not sought assistance from the union.  Therefore, when the Judge rejected the Defendants case Law, the Plaintiff's case was detrimentally left resting on a hearsay catastrophe.

### Specific Complaints

1. The Defendant filed a class action law suit against the Plaintiff wishes.
2. During the signing of the retainer agreement the Defendant Misrepresented the Breach of Fiduciary Duty charge against the union reflected the Plaintiff's complaint that the union refused to process his grievance.
3. The Defendant refused to file the Plaintiffs' law suit for (4) months, and attempted to blackmail the Plaintiff to bring in his 200 co-workers to join the law suit. The Plaintiff had to file a verbal complaint with D.C. bar association to break the stalemate.
4. During the signing of the retainer agreement, the Defendant attempted to omit the Plaintiff's denial of disability complaint against G4S.
5. The Defendant filed the wrong charge against the F.C.G.O.A union (Breach of Fiduciary Duty of 401K plan) and permitted the (6) month statute of limitation to expire on the correct charge (Breach of Fiduciary Duty of Fair Representation) in order to be able to file a class action suit. Evidenced by the Defendants' of change of language between the retainer contract and the civil cover sheet.
6. The Defendant failed to re-assert the Plaintiff's Law suit against the union when the International President falsified article 11 of the C.B.A. and presented the fake document to G4S as evidence against the Plaintiff.
7. The Defendant failed to utilize a document obtained by the Plaintiff from the local President of the F.C.G.O.A union which supports the Plaintiff's claim of grievance refusal

by the union. The defendant did not send the document to the Judge nor opposing counsel.
8. The Defendant provided the Plaintiff with incorrect court date information on (2) consecutive occasions. First, the Defendant provided the wrong court date and secondly, the Defendant provided the correct court date but the wrong courtroom number.
9. On August 27, 2012, the Defendant refused to follow the Plaintiff's instructions to ask G4S for a $50,000 settlement in exchange for signing a confidentiality clause. The Defendant stated she would only ask for a $10,000 settlement.
10. The Defendant failed to file a Law suit against G4S for denying the Plaintiff disability insurance, as agreed upon in the retainer agreement.
11. The Defendant refused to answer the Plaintiff question regarding his Legal bill balance. The Plaintiff asked the Defendant what was his balance as of September 2012 and the Defendant gave him an answer reflecting his balances as of June 2012.
12. The Defendant emailed the Plaintiff an $8,500 bill and only gave the Plaintiff (6) days to pay the bill.
13. The Defendant breached the retainer contract a second time when she failed to cooperate with the Attorney/Client Arbitration Board. Consequently, the fee dispute was passed over to the D.C. Bar association. Section (D) of the retainer contract requires the Attorney and Client cooperation.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter judgement in his favor and against Defendant and that it Order as follows:
a. Order the Defendant to compensate the Plaintiff $100,000 for mishandling his case against the F.C.G.O.A. union by filing the wrong charge against the union.
b. Order the Defendant to compensate the Plaintiff $100, 000 for mishandling his case against G4S for denying the Plaintiff disability insurance.
c. Order the Defendant to compensate the Plaintiff $50,000 for refusing to follow the Plaintiffs' instruction to request a $50,000 settlement from G4S, in exchange for the Plaintiff signing a confidentiality clause.
d. Order the Defendant to compensate the Plaintiff $50,000 for breaching the retainer contract by filing a class action suit against the Plaintiff's wishes and requiring the Plaintiffs case to be altered to match the situation of the 200 co-workers whom had not yet stepped forward.

e. Order the Defendant to compensate the Plaintiff $50,00 for the (4) months delay of attempted blackmail and causing the (6) month statute of limitation to expire on the correct charge against the union, breach of duty of Fair Representation.
f. Order the Defendant to compensate the Plaintiff for Punitive and Mental Duress Damages in the amount to be determined by the court.

The Plaintiff requests a trial by jury.

The Plaintiff requests compensation from the Defendant of at least $350,000

Respectfully Submitted,

Pro Se

Robert Britt
*Robert Anty Britt* (signature)
11411 Lake Arbor Way #915
Mitchellville, MD. 20721
(202)997-3822
zulu350z@comcast.net
6/3/15

8

Exhibit A